## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOE HAND PROMOTIONS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-CV-450-GKF-PJC |
| ) | |
| WILLIAM D. KINDER, a/k/a DAVID ) | |
| W. KINDER, Individually and d/b/a ) | |
| JUMPIN J'S; and JUMPIN J'S, LLC, ) | |
| an Oklahoma Limited Liability Company, ) | |
| d/b/a JUMPIN J'S, ) | |
| ) | |
| Defendants and Third Party Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| DISH NETWORK, L.L.C., ) | |
| ) | |
| Third Party Defendant. ) | |

## OPINION AND ORDER

Before the court are the Motion for Summary Judgment [Dkt. #24] filed by plaintiff Joe Hand Promotions, Inc., and the Motion for Partial Summary Judgment [Dkt. #35] of defendants William D. Kinder and Jumpin J's, LLC.

Plaintiff filed this action pursuant to the Communications Act of 1934, 47 U.S.C. § 605, *et seq.*, and the Cable and Television Consumer Protection and Competition Act of 1992, 47 U.S.C. § 553, *et seq.* It alleges defendants, who are owners and/or operators of Jumpin J's, a commercial establishment located in Tulsa, Oklahoma, intercepted and exhibited *"Ultimate*

*Fighting Championship 109: "Relentless": Randy Couture v. Mark Coleman,* telecast on February 6, 2010 (the "Fight"), to which plaintiff owns exclusive nationwide distribution rights.

Plaintiff seeks summary judgment against defendants as to liability under both § 553 and § 605, and seeks maximum statutory damages of $10,000 and maximum enhanced damages of $100,000 under § 605. Defendants seek summary judgment on plaintiff's § 553 claim, arguing plaintiff has presented no evidence supporting a claim of cable piracy.

**Material Facts**

Plaintiff was granted the exclusive nationwide television distribution rights to the Fight. [Dkt. #25, Plaintiff's Statement of Material Facts, Ex. 1, Joe Hand, Jr. Affid., ¶3, and Ex. 1 thereto, Distributorship Agreement, ¶1; Dkt. #38, Ex. 1, Supplemental Joe Hand, Jr. Affid., ¶4]. Plaintiff's distribution rights encompassed all undercard events as well as the main event and all color commentary. [*Id.,* Hand Affid., ¶7; Dkt. #38, Ex. 1, Supplemental Affid., ¶4].

Pursuant to the contract granting plaintiff distribution rights, plaintiff entered into sublicensing agreements with various commercial entities, including entities in Oklahoma, by which it granted limited sub-licensing rights to permit the public exhibition of the program. [*Id.,* Hand Affid., ¶3].

On February 6, 2010, defendants exhibited the Program in their commercial establishment, Jumpin J's, operating at 1630 W. 51st Street, Tulsa, Oklahoma. [*Id.,* Hand Affid., ¶7; Ex., 2, Nicolin Decker Affid.]. Defendants never purchased a commercial license from plaintiff that would have permitted them to exhibit the Fight lawfully at Jumpin J's. It was not possible for defendants to broadcast the Fight lawfully at Jumpin J's without plaintiff's authorization. [*Id.,* Hand Affid., ¶¶7, 9].

The commercial licensing fee for an establishment the size of Jumpin J's was $1,100. [*Id.,* Hand Affid., ¶8; Ex. 2, Decker Affid.] (noting capacity of Jumpin J's as 75). Defendants did not pay the commercial licensing fee to broadcast the Fight. [*Id.,* Hand Affid., ¶¶3, 7].

Defendants failed to respond to Requests for Admission promulgated by plaintiff. [Dkt. #25, Ex. 3, Joshua Cline Affid., ¶¶3-7; Exs. 4-5, ]. Therefore, pursuant to Fed.R.Civ.P. 36(a)(3), defendants are deemed to have admitted the following:

a. They were the owners, managers, and officers of Jumpin J's when the Fight was broadcast, and any employees of the establishment were working on their behalf.

b. Defendants were present at Jumpin J's when the Fight was broadcast.

c. Defendants advertised that the Fight would be telecast at Jumpin J's, believed that the programming would be of interest to the patrons of Jumpin J's, and required a cover charge be paid for admission.

d. They did not pay a licensing fee to plaintiff.

e. They broadcast the Fight at Jumpin J's, on Saturday, February 6, 2010.

f. They were aware that a licensing fee had to be paid to plaintiff.

g. The Fight was received because a residential cable service was diverted into Jumpin J's, an illegal decoder was used in Jumpin J's, a satellite access card programmed to enable receipt of satellite service without proper authorization or payment was utilized, and/or defendants employed some means to intercept or receive the Fight other than paying plaintiff.

h. They intentionally broadcast the Fight by deception, and for financial gain.

[Dkt. #25, Exs. 4-5, First Requests for Admission to William D. Kinder and Jumpin J's, LLC].[1]

Defendants have submitted the Affidavit of Brian Kinder, in which he makes statements controverting the admissions listed above and avers that Jumpin J's was a subscriber of satellite

---

[1] In their response to the Motion for Summary Judgment, defendants stated they intended to file a motion for relief from the deemed admissions pursuant to Fed.R.Civ.P. 36(b). However, no such motion has been filed.

3

television programming services with Dish Network, L.L.C., ("Dish Network"); Kinder requested service for a commercial establishment; he believed Dish Network had properly established an account for a commercial establishment; the programming at issue was purchased by Jumpin J's using an onscreen menu system provided by Dish Network; Dish Network charged Jumpin J's a fee of $54.99 for the program; and Jumpin J's received the programming using equipment provided to it by Dish Network. [Dkt. #37, Ex. 1, Brian Kinder Affid.].[2]

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, affidavits and depositions "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court must "view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury." *Aramburu v. Boeing Co.,* 112 F.3d 1398, 1402 (10th Cir. 1997).

A party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact, but must support such assertions by citing to particular parts of the record, including depositions, documents, affidavits or other materials. Fed.R.Civ.P. 56(c)(1). An affidavit used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated. Fed.R.Civ.P. 56(c)(4). Mere conclusory allegations, without evidentiary support, do not create a genuine issue of fact. *L & M Enters., Inc. v. BEI Sensors & Sys. Co.,* 231 F.3d 1284, 1287 (10th Cir. 2000). [T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the

---

[2] On August 15, 2012, defendants filed a Third Party Complaint against Dish Network, LLC. [Dkt. #36].

evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249-50 (1986).

## Analysis

47 U.S.C. § 553 provides, in pertinent part: "[N]o person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Additionally 47 U.S.C. § 605(a) provides:

> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his benefit or for benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substances, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

47 U.S.C. § 605(a). These statutes provide statutory protection against the theft of communications such as the Fight in this case. *See DirecTV, Inc. v. Webb,* 545 F.3d 837, 844 (9th Cir. 2008); *California Satellite Systems v. Seimon,* 767 F.2d 1364 (9th Cir. 1985). A majority of courts have held that 47 U.S.C. § 553 applies to a cable interception and 47 U.S.C. § 605 applies to a satellite interception. *See Joe Hand Promotions, Inc. v. Ducummon,* 2012 WL 1410262, *1 (N.D.Okla. Apr. 23, 2012).

Under both § 553 and § 605, "[a]ny person aggrieved…may bring a civil action in a United States district court or in any other court of competent jurisdiction." 47 U.S.C. §

553(c)(1); 47 U.S.C. § 605(e)(3)(A).  Section 605 defines "any person aggrieved" to include "any person with proprietary rights to the intercepted communication by wire or radio." 47 U.S.C. §605(d)(6).  Although § 553 does not define "aggrieved party," case law confirms a person with proprietary rights in the intercepted communication is a "person aggrieved" under that statute. *J&J Sports Productions, Inc v. Rezdndiz,* 2008 WL 5211288, *2 (N.D. Ill., Dec.9, 2008); *PPV Connection, Inc. v. Grau-Alvarez,* 2009 WL 5064476, *4 (D. Puerto Rico Dec. 16, 2009).

To establish liability under either § 553 or § 605, plaintiff must prove that defendants unlawfully exhibited, published or divulged a privileged communication and the signal transmitting that communication was delivered to the intercepting party by way of a satellite or cable transmission.  It is not necessary for plaintiff to establish "willfulness" concerning the exhibition in order to establish liability.  47 U.S.C. § 605(e)(3)(C)(iii); 47 U.S.C. § 553(c)(3)(C); *J&J Sports Productions, Inc. v. Vega,* 2011 WL 776172, *2 (W.D. Okla. March 1, 2011).  Both § 553 and § 605 are strict liability statutes.  *J&J Sports Productions, Inc. v. Delgado,* 2012 WL 371630 (E.D. Cal. Feb. 3, 2012).

In its motion, plaintiff seeks maximum statutory damages of $10,000.00 under 47 U.S.C. § 605(e)(3)(C)(i)(II) and maximum enhanced damages of $100,000.00 under 47 U.S.C. § 605(e)(3)(C)(ii). Additionally, it seeks recovery of attorney fees in the amount of $4,056.25 and costs totaling $400.00.  Defendants seek summary judgment on plaintiff's § 553 claim.

Defendants failed to respond to requests for admission or to file a motion for relief from the effect of Rule 36(a)(3).  Therefore, the court deems those request admitted.  Nevertheless, the court has examined Kinder's affidavit, which establishes that he ordered and showed the fight

through Dish Network, a satellite service provider, and thus § 553 is not implicated. Defendants are entitled to summary judgment on the § 553 claim.

The evidence also shows that defendants paid the residential fee of $54.99 for the program and not the commercial fee of $1,100 charged for an establishment of the size of Jumpin' J's. Since § 605 imposes strict liability, plaintiff is entitled, based on the evidence, to judgment as to liability for violation of that statute.

In support of its damages claim, plaintiff cites recent decisions by courts in the Western District of Oklahoma in which maximum statutory and enhanced damages have been awarded: *J & J Sports v. Cuellar,* 5:10-CV-1162-C (W.D. Okla., Apr. 14, 2011) [Dkt. #13]; and *J & J Sports Productions, Inc. v. Crawford,* Case No. 5:11-cv-453-L (W.D. Okla. Dec. 14, 2011) [Dkt. #15].

However, in a similar case in this district, United States District Judge Claire V. Eagan declined to award maximum statutory damages or the maximum allowable enhancement. *See Joe Hand Promotions, Inc. v. John M. McLemore, et al,* 4:10-CV-772-CVE-TLW (N.D. Okla. Sept. 26, 2011) [Dkt. #28]. There, the seating capacity of the offending establishment was 70; the sublicense fee would have been $875; no cover fee was charged; and the event was broadcast on three television screens. With respect to statutory damages, Judge Eagan reasoned an award of $2,500 "compensates plaintiff for any fee that should have [been] paid by defendants to obtain a sublicense to broadcast the program and for disgorgement of any possible financial benefits derived by defendants from displaying the illegally intercepted program." [*Id.* at 3]. Judge Eagan awarded enhanced damages of $2,500, finding this amount "should be sufficient to punish defendants for their illegal conduct and deter future violations of § 605," but "not so substantial that it will likely put defendants out of business." [*Id.* at 4].

7

Similarly, in *Ducummon,*, 2012 WL 1410262 *2, this court found $2,000 to be the appropriate amount for statutory damages and $2,000 to be an appropriate enhancement, where the broadcast fee for the fight was $750, no cover fee was charged, no more than five to eight patrons were in the defendant bar and there was no evidence of repeated violations by defendants.

In *J&J Productions, Inc. v. Maria G. Rivas,* 4:10-GKF-TLW (N.D. Okla. Aug. 16, 2012), this court awarded statutory damages of $2,500 and enhanced damages of $2,500, where defendants placed an order for the Fight on a DISH Network residential account, paying a fee of $54.95, but broadcast the Fight at the restaurant without paying the commercial licensing fee of $2,200. There—as here—defendants denied any willful wrongdoing and blamed the mixup on Dish Network. No cover fee was charged, there were 15 patrons in the restaurant and plaintiff presented no evidence of financial benefit to defendants or repeated violations by defendants.

In this case, defendants paid $54.99 for the program instead of the commercial fee of $1,100. There was no cover charge. The seating capacity of the establishment was approximately 75. During the program, there were approximately 21 people in Jumpin J's. Plaintiff has presented no evidence of financial benefit to defendants or repeated violations by defendants. Adopting the reasoning set forth in *McLemore, Ducummon* and *Rivas,* the court finds $1,250 to be appropriate amount for statutory damages and $1,250 to be an appropriate enhancement, for a total damage award of $2,500.

## Attorney Fees and Costs

Plaintiff seeks attorney fees under 47 U.S.C. § 605(e)(3)(B)(iii), which provides that "[t]he court shall direct the recovery of full costs, including awarding reasonable attorney's fees to an aggrieved party who prevails." *Id.* Plaintiff attached to its motion the declarations of its

8

counsel, Joshua Cline and Thomas Riley.  The declarations include itemized records evidencing the time spent and the rates charged for the prosecution of this case.  Plaintiff requests attorney's fees of $2,160.00 for the Tulsa firm of Savage, O'Donnell, Affeldt, Weintraub & Johnson ("Savage, O'Donnell") and $1,896.25 for the California firm of Law Offices of Thomas P. Riley, P.C. ("Riley Firm").

The court has reviewed the declarations and the accompanying itemized time records and finds the amount sought by plaintiff for work performed by the Savage, O'Donnell firm to be reasonable, both with respect to the hourly rates sought and the time spent.  However, with respect to fees charged by the Riley Firm, the court finds the $400 per hour rate charged by attorney Riley, the $300 per hour rate charged by the "research attorney," the $275 per hour rate charged by the associate attorney, and the $100 per hour rate charged by the paralegal to be excessive. Therefore, Riley's rate is reduced to $200 per hour, the research attorney's rate to $150 per hour, the associate attorney's rate to $140, and the paralegal's rate to $75, resulting in a reductions of $140.00 for the time charged by attorney Riley, $600.00 for the research attorney's time, $67.50 for the associate attorney's time and $46.25 for the paralegal's time.  Additionally, the Riley Firm charged a total of $93.75 (1.25 hours x $75/hr.) for work performed by an administrative assistant.  This time is not compensable.  These reductions result in fees totaling $948.75 for the Riley firm.  The combined compensable attorney fees total $3,108.75.

## Conclusion

For the reasons set forth above, defendants' Motion for Partial Summary Judgment [Dkt. #35] as to liability under 47 U.S.C. § 553 is granted.  Plaintiff's Motion for Summary Judgment [Dkt. #24] is denied as to liability under 47 U.S.C. § 553 and granted as to liability under 47 U.S.C. § 602, and the court awards plaintiff statutory damages in the amount of $1,250.00 and

enhanced damages in the amount of $1,250.00 pursuant to 47 U.S.C. § 602, and attorney fees totaling $3,108.70, pursuant to 47 U.S.C. § 605(e)(3)(B)(iii).

ENTERED this 13th day of November, 2012.

_____
GREGORY K. FRIZZELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT